E. W. CLARK & BRO., Appellants, v. HUMPHREYS, Respondent.

1. A master of a vessel, as such, has power to bind the owners for necessaries and repairs only : the burden of proving the necessity lies upon the creditor.
2. A custom or usage of trade, to be valid and binding, must be reasonable.
3. A custom or usage among masters and clerks of steamboats for the master to draw bills of exchange upon the clerk, and negotiate the same, is an unreasonable custom and can not be invoked to fix a liability upon the owners to the parties to whom such bills of exchange may be transferred.

*Appeal from St. Louis Court of Common Pleas.*

This was a suit brought by E. W. Clark & Bro., bankers, payees of the bills of exchange set forth below, against Solon Humphreys and Henry Corwith as part owners of the steamboat "Michigan."

"Exchange for $1500. St. Louis, Mo., 10th July, 1854. Three days after sight of this first of exchange (second unpaid), pay to the order of E. W. Clark & Bro., at the office of Samuel Smith & Co., fifteen hundred dollars, for value received, for steamer Michigan and owners. [Signed] per Robert A. Reilly, master. To. W. M. Tompkins, jr., clerk of steamboat Michigan, New Orleans, La."

"Exchange for $375. St. Louis, Mo., 13th July, 1854. Two days after sight of this first of exchange (second unpaid), pay to the order of E. W. Clark & Bro., three hundred and seventy-five dollars, for value received, account of steamboat Michigan and owners. [Signed] per Robert A. Reilly, master. To Wm. M. Tompkins, jr., clerk steamboat Michigan, New Orleans, La."

The petition set forth the drawing of the above bills on behalf of said steamboat Michigan by the master thereof, R. A. Reilly, and their acceptance, July 20, 1854, by the drawee, W. M. Tompkins, clerk of said boat; also their presentment for payment at maturity, and their protest for non-payment; of all of which defendants are alleged to have had due notice.

The suit was dismissed as to Corwith. At the trial the fol-

lowing proof was introduced by plaintiffs: That at the dates of said bills of exchange the defendant Solon Humphreys and Henry Corwith and Robert A. Reilly were owners of the steamboat Michigan, and said Reilly was master, and William M. Tompkins, clerk of said steamboat; that the bills of exchange sued on were drawn by said Reilly and accepted by said Tompkins as stated in the petition; that they were protested for non-payment; that neither the drawer nor the acceptor of said bills, nor the owners of said steamboat, provided any funds for the payment thereof; that said Tompkins accepted said bills solely as clerk of said boat, and had no funds in his possession for their payment from the time the same were drawn till their maturity; that "for the last twenty years it has been the general custom of the masters of steamboats to draw bills of exchange like those sued on; that it was often specified in such bills on what account they were drawn; that this is often done for the purpose of raising money to defray the expenses of running steamboats and for paying charges; that it has been a general custom for such bills to be drawn and negotiated, and such was the usual practice of officers of steamboats."

Upon the above evidence the plaintiff asked the court to give the following instructions: "1. The notice to one of several owners of a steamboat of the dishonor of a bill of exchange drawn by the officers of a steamboat is a notice to all. If the jury find from the evidence that Robert A. Reilly was a part owner of the steamer Michigan at the date of the bills of exchange sued on, and that the said Reilly had due notice of the presentation and dishonor of said bills of exchange, such notice is sufficient to bind the other owners of said boat; provided the jury shall further find that the drawing of bills of exchange is within the usual and customary business of the masters and clerks of steamboats. 2. If the jury find from the evidence that the bills of exchange were drawn and accepted as stated in plaintiffs' petition, and that said Reilly and said Tompkins knew, when said bills were drawn and accepted, and when they were payable, that said bills would

not be paid when due, and that in fact no money was provided by the officers or owners of said boat to pay said bills at their maturity, then the owners of said boat can not relieve themselves, and are not discharged from liability, in consequence of not having received notice of the non-payment of said bills of exchange.   3. If the drawing, endorsing and accepting of bills of exchange be within the ordinary and customary business of masters and clerks of steamboats, then such acts may be binding upon the owners of steamboats whose masters or clerks draw, endorse or accept such bills, and the owners of steamboats may be held liable on said bills. 4. If the jury find from the evidence that Robert A. Reilly was, at the date of the bills of exchange sued on, master of the steamboat "Michigan," and drew the bills sued on on William M. Tompkins, clerk of said boat; that said Tompkins was then clerk of said boat, and accepted the same; that said bills were duly presented for payment and payment thereof was duly demanded, according to the tenor of said bills, and was refused; that said bills were duly protested for non-payment, and that the defendant had due notice of said demand, refusal and protest; and if the jury shall further find that it was within the usual and ordinary scope of the business of the officers of boats to draw and accept bills of exchange, they will find for the plaintiffs in this suit.   5. If it be within the ordinary and customary business of the officers of steamboats to draw and accept bills of exchange for or on account of their boats, then a notice of the dishonor of such bills so drawn, duly given to such officers, is as effective to bind the owners of boats as if such owners had received personal notice."

The court refused to give the foregoing instructions, and instructed the jury that upon the facts proved the plaintiffs were not entitled to recover; whereupon the plaintiffs took a non-suit, with leave, &c.

*Knox & Kellogg*, for appellants.

I. There is always an implied authority vested in an agent to do all such acts as it is usual and customary for agents in

similar circumstances to perform. As there is no law prohibiting masters and clerks of steamboats from drawing and accepting bills of exchange, and it has ever been recognized as an authority incident to their business, and usually exercised, there is nothing either in the law or reason that will prevent the owners of steamboats from being liable on such bills of exchange. Owners of steamboats are bound by the negotiable paper executed by the officers of steamboats. (6 Mo. 355 ; 9 Mo. 654 ; 10 Mo. 531.)

II. There was no necessity of a notice of non-payment in this case. (Sto. on Bills, § 367.) Besides, notice to Reilly was notice to all. A notice to the master and clerk was a notice to the owners.

*H. Hitchcock*, for respondent. The master and clerk of a steamboat have no authority, as such, to draw, accept or endorse bills of exchange in the name or behalf of the owners, so as to bind them without special authority. (See 10 Metcalf, 375 ; Abbott on Shipping, 173.) Nor has he such power as part owner. (Abbott on Ship. p. 107.) No usage for a master to draw bills on his owners is legal, valid or binding ; nor should proof of such usage have even been received. (10 Metcalf, 375 ; 5 Shep. 147.) The authority of a master as such to bind the owners even for necessaries, does not exist at home. (Arthur v. Burton, 6 Mees. & Wels. 188 ; Abbott on Ship. 175.) The power of a master to bind the owners either for necessaries or repairs, like that to hypothecate the ship, applies to foreign ports, and this does not either at such ports or at home include the power to draw, accept or endorse bills of exchange—at least unless it be affirmatively shown what the object and necessity of the transaction were. (See Abbott on Shipping, p. 152, 167, 168, 172, & notes.) There being no evidence as to the purpose for which the bills in question were drawn, nor of the application of the money raised upon them, nor of any special authority to draw, accept or endorse them, the instructions asked were properly refused.

SCOTT, Judge, delivered the opinion of the court.

By the maritime law, the authority and duties of masters of vessels are defined. The master only has authority to bind the ship-owner for necessaries and repairs, and the burthen of proof is on the creditor to show that the services rendered, or the money and goods advanced, were for those purposes, or to prove the actual existence of the necessity of those things which give rise to his demand. (Abbott on Ship. 172.) If a bill is drawn by a master and passed by negotiation to an innocent endorsee, the burthen of proof will be shifted from the creditor to the owner to his disadvantage. Collier says that a partner will not be liable even to a *bona fide* endorsee if he can show that the bill was given on another account than for necessaries. (Sec. 1227.) Thus showing that, by drawing a bill which passes to an innocent endorsee, the burden of proof will be changed from one party to the other.

It does not appear that the bills in controversy were drawn for necessaries, unless the words on the face of them, " for value received, account of steamboat Michigan and owners," import as much. But this will not relieve the creditor, in our opinion, from the necessity of proving that the debt was contracted for necessaries, or that a necessity existed which rendered the credit necessary.

We do not see how the custom proved affects the owners of vessels. The evidence is silent as to whether they acknowledged themselves bound by such bills. If the captain or master draws bills or orders on the clerk and they are honored, that may be a private arrangement between themselves for their own convenience in managing the concerns of the boat, and can not affect the owners, nor show that they regarded themselves liable for such acts of their agents. But a custom that a master of a boat, by a bill of exchange on the clerk of the same boat, may bind the owners for any sum he may see fit to draw, would be so inconvenient and unreasonable that no wise system of law could sanction it.

Prudent men would scarcely consent to become owners of vessels under such a state of law. In the case of Bowen et al. v. Stoddard, 10 Met. 380, the court held that there was no such relation between the joint owners of a vessel as would warrant the conclusion that a bill drawn by one of them on the others in a foreign port for necessaries would be an acceptance of such bill. It was moreover holden that a usage among the merchants of New Bedford and Fairhaven, engaged in the whaling trade, to accept the bills of their masters drawn for supplies furnished abroad, is not such a one as can charge the owners as acceptors; for a usage to be legal must be reasonable as well as convenient, and that a usage can not be reasonable which puts at hazard the property of the owners at the pleasure of the master by making them responsible as acceptors on bills drawn by him. There is no hardship in this, for if it is necessary that a master should have such authority it is a very easy matter to confer it on him by express words. The owner then, knowing in whom he confided, would not be in danger of being ruined by the acts of his agents. A constituent may be willing to entrust to an agent an authority for some purposes, whilst an authority for other purposes would be carefully withheld from him.

From the petition, it would seem that this cause in the court below turned on an implied authority in the master to draw the bills and the custom which was attempted to be set up by the evidence. The fact came out on the trial that the master was also part owner of the boat. Giving the plaintiffs the full benefit of this disclosure and amending the pleadings to accommodate them to this state of facts, and we are satisfied that he is not entitled to recover for the reasons that have been stated. The other judges concurring, the judgment will be affirmed.